UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


GEORGE AND CRISTINA FOWLER                                              PLAINTIFFS

V.                                                      CIVIL ACTION NO. 1:06cv489-LTS-RHW

STATE FARM FIRE & CASUALTY COMPANY,                              DEFENDANTS
EDWARD B. RUST, JR., HAAG ENGINEERING,
AND STEVE SAUCIER


MEMORANDUM OPINION

BACKGROUND

        Edward B. Rust, Jr. (Rust) is President, Chief Executive Officer, and Chairman of the
Board of State Farm Fire & Casualty Company (State Farm), and a resident citizen of Illinois.
Plaintiffs, who are adult resident citizens of New Orleans, Louisiana, own a vacation home in
Pass Christian, Mississippi.  That dwelling, the personal property in it, and its loss of use were
covered by a homeowners policy issued by State Farm.  It is alleged that the policy also
contained a "hurricane deductible endorsement."  The Plaintiffs' insurance agent was Steve
Saucier (Saucier).  The Plaintiffs state that "[t]he insurance was underwritten, sold, marketed,
and issued to Plaintiffs entirely and solely by State Farm, by and through Steve Saucier."
Further, "Plaintiffs reasonably relied upon both expressed and implied representations made by
State Farm and Steve Saucier, that Plaintiffs' homeowners' policy would fully cover any and all
property losses due to a hurricane."

        On August 29, 2005, Hurricane Katrina reduced Plaintiffs' Pass Christian home to a slab
and some pilings.  According to their Complaint, the Plaintiffs "notified State Farm of their loss
almost immediately thereafter."  They apparently also maintained a flood policy with State Farm.
State Farm "finally" sent an adjuster, who allegedly "offered the full amount of Plaintiffs' flood
policy," which "Plaintiffs initially declined . . . , fearing that it was a trap set by State Farm to
prevent collection under the homeowners."  State Farm confirmed ultimately that acceptance of
the flood money would not prejudice in any way the claim under the homeowners policy.

        The Plaintiffs claim that the principal floors of their home (those located on pilings on the
second and third floors) were destroyed by wind.  As to the flood loss, they accuse State Farm of
assigning a frivolous estimate of the cost to rebuild.  With respect to the homeowners policy, the
Plaintiffs disagree with State Farm's conclusion that the damage to the dwelling was caused by
waves and tidal surge and with its decision to rely on a report by Haag Engineering (Haag).
Plaintiffs describe Haag's report as "flimsy" and as one that "could have been written by a fifth
grader," being "devoid of facts or engineering analysis."  They base these descriptions on a

finding that scrape marks found on a girder are attributable to wave action, a presumption which is labeled as "ridiculous, obviously persuaded by the position of the company (State Farm) that paid Haag Engineering to inspect Plaintiffs' residence." Plaintiffs' position is that the more likely cause of the scrape marks is wind. They retained Ivan Mandich, "a renowned structural engineer," to inspect the site and his conclusion, "without hesitation," was that wind destroyed the principal floors of the dwelling.

Plaintiffs have sued State Farm for breach of contract; State Farm, Rust, and Haag for fraud; Haag for breach of fiduciary duty and misrepresentation; State Farm, Rust, and Saucier for conversion; State Farm for specific performance; State Farm, Rust, and Saucier for unjust enrichment/constructive trust; State Farm for an injunction/equitable estoppel; and Steve Saucier for misrepresentation, negligence, and breach of contract. The other counts of the Complaint are entitled Declaration of Insurance Coverage; Indemnity; and Reformation of Insurance Contract based on Equitable Fraud. They seek various sorts of remedies.

THE ISSUE AND MORE RELATED FACTS

What is before the Court is Defendant Rust's [13] Motion to Dismiss for Lack of Personal Jurisdiction and [14] Motion to Quash Service of Process, pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(4), and 12(b)(5). It is appropriate to quote the paragraphs (or parts of them) of the Complaint related to Rust in order to more fully indicate the allegations on which the theories of recovery against him are based.

As President and Chief Executive Officer of State Farm, Rust "made the decisions which are the subject of this lawsuit . . . [I]n an effort to enrich himself by reducing State Farm's actual losses, [he] opted to arbitrarily and capriciously deny valid claims to State Farm policyholders injured by Hurricane Katrina." Furthermore,

State Farm, who knew perfectly well that the Plaintiffs' home was destroyed by Hurricane Katrina, had made a policy decision at the uppermost levels of the company, specifically including Edward B. Rust, Jr., to falsely claim that all of the destruction to residences along the Mississippi Gulf Coast would not be covered in State Farm's homeowner policies. The Defendants' plan was simple and transparent, let the United States Government flood policy pay for the destruction, hope that poor people who cannot afford a lawyer accept the flood policy money, and State Farm would get off without paying anything. They would fight those who could afford a lawyer.

Then, during the adjustment process,

[i]n a letter to Edward B. Rust, Jr. dated September 27, 2005, the Plaintiffs reported the reprehensible conduct of State Farm and its employees to Edward B. Rust, Jr.. In that letter, the Plaintiffs demanded that Edward B. Rust, Jr. put a stop to that behavior. Edward B. Rust, Jr. simply chose not to respond to the Plaintiffs' letter or any subsequent letter. Obviously, Edward B. Rust, Jr. felt that he was too important to deal

with his policyholders.

After Plaintiffs submitted to State Farm the report of their structural engineer and asked for reconsideration of their claim,

> [a] Mr. Mark Drain, allegedly from "the President's office" (Edward B. Rust, Jr.), called and advised Mr. Fowler that they were going to "stick to" the Haag report and reject Mr. Mandich's report.  No explanation was given.  Mr. Fowler asked Mr. Drain to advise Edward B. Rust, Jr. that his behavior and that of State Farm was reprehensible and causing injury to many good people.

In the fraud count against State Farm, Rust, and Haag, the Plaintiffs assert:

> State Farm, and its president and CEO, Edward B. Rust, Jr., represented to the Plaintiffs that they had full coverage for any loss to their home resulting from a hurricane.

> Once it was apparent that there were a significant number of claims due to Hurricane Katrina, State Farm, Edward B. Rust, Jr., and Haag Engineering Co. proceeded, as usual, to arbitrarily declare claims "flood claims" and therefore limit the coverage of their customers and pay those claims, at least in part, out of money from the United States Government.  They also hoped to discourage Plaintiffs from pursuing their claim and hope that the United States Government would step in and resolve their claims.

> Haag Engineering Co. is a company that works under the influence of State Farm and Edward B. Rust, Jr. in order to deprive policyholders, including Plaintiffs, of their rights.

> In this case they conspired with State Farm and Edward B. Rust, Jr. to issue a bogus, fraudulent unsubstantiated report dated November 14, 2005, claiming that the Plaintiffs' home was destroyed by wave action when they knew otherwise.

>       . . . .

> The above-described fraud, committed by State Farm, Edward B. Rust, Jr. and Haag Engineering Co. has resulted and will continue to result in harm to the Plaintiffs and countless other policyholders along the Gulf Coast.

> As a result of the fraudulent policy decisions and representations made by State Farm, Edward B. Rust, Jr. and Haag Engineering Co., Plaintiffs have not been paid under their homeowners' policy and have suffered damages.

It is alleged that State Farm, Rust, and Saucier committed conversion by being "in possession of and unlawfully exercising control of monies which are rightfully owned by Plaintiffs."  Because it is claimed that compensation is owed for the loss of the insured residence, and these defendants have refused to turn over the money owed to Plaintiffs and have indicated

that they do not intend to do so in the future, then the policy decision to not turn over this money "unlawfully held by State Farm and owed to Plaintiffs" amounts to conversion.

Under the unjust enrichment/constructive trust portion of the complaint are found the following allegations:

In marketing, selling, and issuing the subject policy to Plaintiffs, State Farm, Edward B. Rust, Jr. and Steve Saucier represented and agreed to obtain and provide Plaintiffs with full coverage for all property damage and loss of use typically caused by a hurricane, including damage proximately caused by hurricane winds, tornadoes, and/or storm surge. These representations and contractual obligations are evidenced by the homeowner policy's coverage provisions and "hurricane deductible."

Plaintiffs have paid State Farm substantial monetary premiums for an extended period of time for such "hurricane" coverage. As a result, State Farm, Edward B. Rust, Jr. and Steve Saucier made money.

Despite realizing substantial premiums from Plaintiffs, State Farm, Edward B. Rust, Jr. and Steve Saucier have wrongfully withheld the insurance proceeds owed to Plaintiffs under the homeowners' policy for the hurricane damage to their insured property.

Additionally, by classifying the damage to Plaintiffs' property by Hurricane Katrina as "flood damage," State Farm, Edward B. Rust, Jr. and Steve Saucier have wrongfully realized insurance premiums and withheld insurance proceeds that the Plaintiffs are entitled to, to the detriment of both Plaintiffs and the federal government.

State Farm, Edward B. Rust, Jr. and Steve Saucier have therefore been unjustly enriched at Plaintiffs' expense.

Plaintiffs have suffered substantial injury as a proximate result of their unjust enrichment. Plaintiffs have been and will continue to be forced to pay substantial costs that should be borne by State Farm, Edward B. Rust, Jr. and Steve Saucier under the subject policy.

As a proximate result of State Farm, Edward B. Rust, Jr. and Steve Saucier's false and fraudulent representations and refusal to honor the homeowners policy which they subscribed to, State Farm is in possession of premiums, insurance proceeds, and other monies that in equity, they should not be entitled to retain.

Plaintiffs are therefore entitled to damages resulting from their unjust enrichment, including the imposition of a constructive trust on all premiums Plaintiffs paid to State Farm and on the insureds' proceeds wrongfully held by State Farm under the subject homeowners' policy as well as on all moneys made by Edward B. Rust, Jr. and Steve Saucier.

Count X of the Complaint is the last one applicable to Rust.  Although there are nine paragraphs in this count, only one mentions Rust expressly and that only in passing, while the others deal solely with State Farm.  The one reads:

> Plaintiffs procured insurance through State Farm, Edward B. Rust, Jr. and Steve Saucier and have paid premiums every year to Defendants.  State Farm was thoroughly familiar with the physical location of Plaintiffs' property, and more specifically, was familiar with the close proximity of Plaintiffs' property to the Mississippi Gulf Coast.  State Farm knew or should have known the types of risks against which Plaintiffs needed property insurance, especially risks relating to hurricanes, which commonly form and/or appear in the Gulf of Mexico.

Finally, the Remedies section does not refer specifically to Rust, or, for that matter, Saucier or Haag.  State Farm is the only party called by name.

## LEGAL DISCUSSION

In *Brown v. Flowers Industries, Inc.*, 688 F.2d 328 (5th Cir. 1982), *cert. denied*, 460 U.S. 1023 (1983), the court of appeals summarized well settled law:

> In a diversity action a federal court enjoys jurisdiction over a nonresident defendant to the extent permitted by the long-arm statute of the forum state . . . . Two tests must be met before a state statute can confer jurisdiction over a nonresident defendant.  First, the defendant must be amenable to service under the statute, a requirement that is controlled by the law of the forum state.  Second, assertion of jurisdiction over the defendant must be consistent with the due process clause of the fourteenth amendment, a requirement that is controlled by federal law.  Due process requires that a nonresident defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" or that he perform some act "by which (he) purposefully avails (him)self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," before the forum may extend its long-arm to embrace him.

> . . . .

> The party invoking the jurisdiction of a federal court bears the burden of establishing the court's jurisdiction over a nonresident defendant . . . . On a motion to dismiss for lack of personal jurisdiction, the allegations of the complaint, except as controverted by the defendants' affidavits, must be taken as true.

> . . . .

> The number of contacts with the forum state is not, by itself, determinative . . . . What is more significant is whether the contacts suggest that the nonresident defendant

purposefully availed himself of the benefits of the foreign state.

*Id.* at 331-33 (footnotes and citations omitted).

The court mentioned two other relevant factors in analyzing the due process prong: "the interest of the state in providing a forum for the suit," and the "relative conveniences and inconveniences to the parties." *Id.* at 333 (citations omitted). In *Brown*, personal jurisdiction was found where a single defamatory phone call by a nonresident about a Mississippi resident was made *from outside the state to a person in Mississippi.* The significance of this italicized language will be discussed in more detail *infra.*

Another Fifth Circuit opinion, *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162 (5th Cir. 1985), contains an excellent discussion of Mississippi's long-arm statute (Miss. Code Ann. § 13-3-57). It also draws more clearly the distinction between the exercise of specific and general jurisdiction:

> The former occurs "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contact with the forum." . . . "General jurisdiction" is exercised when a state asserts personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum." . . . When the issue is one of general jurisdiction the defendant's contacts with the forum are examined to determine whether they are sufficiently systematic and continuous as to support a reasonable exercise of jurisdiction . . . . When the issue is one of specific jurisdiction, a court must examine the relationship among the defendant, the forum, and the litigation.

755 F.2d at 1170 (citations omitted).

Mississippi's long-arm statute, cited *supra*, subjects a nonresident person to the jurisdiction of the courts of this state if that person makes a contract with a resident of this state to be performed in whole or in part by any party in this state, commits a tort in whole or in part in this state against a resident or nonresident of this state, or does any business or performs any character of work or service in this state. Although these nonresident Plaintiffs say that Rust signed their policy (and it is probable the same can be said of all other State Farm insureds), he did so as State Farm's President, Chief Executive Officer, and Chairman of the Board. The contract is not with him personally, but with the insurance company. In fact, in the Plaintiffs' own words, the insurance was underwritten, sold, marketed, and issued to them entirely and solely by State Farm, by and through Steve Saucier. Plaintiffs' generalized allegations of fraud are really nothing more than claims against State Farm. These assertions do not meet the heightened pleading standard of Fed. R. Civ. P. 9(b), but a motion to dismiss has not been filed, nor is one suggested, especially since dismissal is not the usual result because other remedies such as a motion for more definite statement under Fed. R. Civ. P. 12(e) are available. The point is that, even taking the allegations of the complaint as true, Rust, in his corporate capacity, committed nothing more in the Plaintiffs' eyes than a personal affront to their plight and that, with respect to the denial of their claim, State Farm and Rust benefitted financially by accepting

premiums and not paying under the policy. *See, e.g.*, *Webb v. Culberson, Heller & Norton, Inc.*, 357 F. Supp. 923 (N.D. Miss. 1973) (no personal jurisdiction over individual officers of corporation where there were no allegations they committed any act of a personal nature except in connection with the corporate affairs, and jurisdiction over individual officers of corporation cannot be predicated merely upon jurisdiction over the corporation itself). It is the Court's opinion that Rust is not amenable to service of process under Mississippi's long-arm statute.

More importantly, due process is violated by the assertion of personal jurisdiction over Rust in this forum. As stated above, claims involving unjust enrichment and conversion relate to the acceptance of premiums and the denial of insurance benefits. Cases cited alleging other misconduct have State Farm as the defendant. The Plaintiffs' broadside sounds more like the stuff of class actions, which this Court has denied in the insurance claim context, *see Guice v. State Farm Fire and Casualty Company*, Civil Action No. 1:06cv1 (Memorandum Opinion and Order dated August 14, 2006), because the nature and extent of property damage suffered by property owners in Hurricane Katrina will vary greatly in particulars depending on the location and condition of the property before the storm struck and depending also on what combination of forces caused the damage.

As far as specific allegations go, the Court has taken into account the arguments contained in Plaintiffs' motion [23] for leave to file a response memorandum (which is attached to the motion) to Rust's reply. In it they point to additional direct and circumstantial evidence not available to them when they filed their original memorandum. This evidence amounts to correspondence from Plaintiffs to Rust, along with Rust's instructions to subordinates to return Plaintiff's phone calls about their claim.

In *Mason v. Shelby County Health Corporation*, 919 F. Supp. 235 (S.D. Miss. 1996), a medical malpractice action was pursued against a nonresident physician who worked in the emergency room of a Memphis, Tennessee, hospital. The doctor filed for dismissal on several grounds; the court found it necessary to address only the argument relating to due process. The plaintiff claimed that "Dr. Gavin undeniably purposefully sought to invoke the benefits and protections of Mississippi law '[b]y undertaking to provide medical care and thus practicing medicine in Mississippi.'" *Id.* at 237. It was undisputed that Gavin's only contacts with Mississippi were telephone calls made to him by health care providers in Mississippi about the patient. After quoting *Thompson*, *supra*, for the proposition that telephone calls made from a forum state to a nonresident defendant are an insufficient basis for asserting personal jurisdiction, and distinguishing *Brown*, *supra*, by pointing out that the nonresident defendant there placed a call to the Mississippi plaintiff, the court observed:

In the case at bar, the court recognizes that plaintiff is not seeking to hold Dr. Gavin liable for answering the phone but rather for undertaking to provide what she contends is negligent medical care. For jurisdictional purposes, though, and apart from the *merits* of this claim, what is relevant to the court is the fact that Dr. Gavin never initiated any contact whatsoever with Mississippi that could potentially subject him to jurisdiction in this forum. Rather, he merely *received* a limited number of phone calls from persons in Mississippi. Such unilateral activity by others is insufficient to support

this court's exercise of jurisdiction.  Accordingly, this court will grant Gavin's motion to dismiss for lack of personal jurisdiction.

919 F. Supp. at 239 (footnotes omitted; emphasis in original).

As in *Mason*, this Court concludes that Plaintiffs have failed to establish that Rust's activities invoked the benefits and protections of this state's law.  His affidavit shows otherwise.  Whether categorized as specific or general jurisdiction, the Plaintiffs initiated the phone call to State Farm's offices in Illinois to express to Rust their displeasure in the manner their claim was being handled.  In addition, Rust simply chose not to respond to their correspondence which, again, was started by Plaintiffs.  There is no claim that Rust made any personal, much less regular, contact with Plaintiffs.  Indeed, his affidavit accompanying the motion to dismiss states that he "was not involved in the purchase, issuance, or renewal of the Plaintiffs' homeowners insurance policy.  Nor was I involved in the handling of the Plaintiffs' claims and their subsequent denial."

Rust is not subject to the jurisdiction of this Court in this case; therefore, his motion in that regard will be granted.  It is unnecessary to address the issue of quashing service of process.

A separate order shall issue.  Decided this the 19th day of September, 2006.

s/ *L. T. Senter, Jr.*
L. T. Senter, Jr.
Senior Judge